UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Renzer Bell

        Plaintiff,

  -against-

Charles Gray,

        Defendant.

Case No.:**20 CV ()()**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**20 CV 1588**

RECEIVED FEB 24 2020 PRO SE OFFICE

The Plaintiff pro se Renzer Bell, ("Plaintiff"), as and for its complaint against defendant, Charles Gray, respectfully pleads, and alleges as follows:

## JURISDICTION AND VENUE

1.      That this Court has jurisdiction over the subject matter of this action under 28 U.S.C. Section 1332(a), by virtue of the diversity of citizenship between the Plaintiff and the defendants.   That furthermore the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs. That the Complaint further claims violation of the Federal Civil RICO Statute, 18 U.S.C. § 1343, and 18 U.S.C. § 1964, in the Fourth Cause of Action.

2.      That venue is proper in the Southern District of New York as it is predicated upon the forum selection clause found in paragraph eleven (11) of the Assignment Of Contract Of Sale-Motor Vehicle contracts executed by the parties herein. [Exhibits P, and Q]

## PARTIES

3.      That the Plaintiff is sui juris, and a citizen of the State of Georgia. That the Plaintiff is a party to the subject contracts sought to be enforced in this action [Exhibit P]. That at all times relevant to the issues at bar, the Plaintiff was and is a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of purchasing and trading a variety of valuable commodities.

4.      That upon information, and belief, the defendant Charles Gray is either an automobile broker, dealer, or investor.  That at all times relevant to the issues at bar, the defendant Charles Gray was and is a merchant as defined in the Uniform Commercial Code, section 2-104; and actively engaged in the business of, inter-alia, selling high-end luxury automobiles.

5.      That upon information and belief, the defendant Charles Gray is a California resident residing in Los Angeles, California having extensive experience in high-end, luxury automobile sales.

## THE NATURE OF THE CASE

6.      That this is an action brought by the Plaintiff/Seller of a movable good against the defendant/Buyer for anticipatory repudiation of contract, or breach of contract. That the subject vehicle is a movable good pursuant to Article Two (2) of the Uniform Commercial Code thereby subjecting the transactions to the provisions and rules set forth under Article Two (2) of the Uniform Commercial Code.

7. That the Plaintiff was introduced to the defendant by John McKinnon, a broker of high-end, luxury automobiles, for the expressed purpose of acquiring the right to purchase high-end, high-line, luxury automobiles from the Plaintiff, and once the subject automobiles were purchased by the defendant, or his agent, the subject automobiles would be resold by the defendant to his clients.

8.  That the common usage of trade in the high-line car industry is that the franchise car dealer will rarely if ever sell the subject new automobile to either another franchise car dealer, or to a pre-owned, non-franchise car dealer due to either contractual prohibitions agreed to with the distributor, or manufacturer, or sanctions from the distributor, or manufacturer that would have adverse economic impact on the franchise car dealer.

9.      That in light of the aforementioned common usage of trade, the course of dealing established between the Plaintiff an the defendant required the defendant to nominate his preferred agent to act as the purported lessor for either the Plaintiff, or the Plaintiff's agent in order to avoid disturbing the concerns, or sensibilities of the franchise car dealers.

10.     That the Plaintiff never entered into a lease agreement with either the defendant, or the defendant's respective agents given that the submission of the Plaintiff's, or the Plaintiff's agent's lessor to the car dealer was merely cosmetic, designed to placate the common usage of trade in the high-line car industry.

11.     That by way of the course of dealing between the Plaintiff, and the defendant, and the plain language of the contracts, the consideration required from the Plaintiff pursuant to the contracts, and course of dealing is the production of a contract of sale from the car dealer that names either the

defendant, or his agent as the purchaser of the subject automobile conforming to the description of the automobile in the contracts.

12.     That upon receipt of the contract of sale produced by the car dealer by the defendant, the defendant had forty-eight (48) hours to pay the Plaintiff the consideration due pursuant to the contracts.

That in the event the defendants elect not to complete the purchase of the subject automobile from the car dealer, the consideration envisioned by the contracts is due to be paid to the Plaintiff as described in the contracts.

13. That the defendant's economic interest in reselling the subject automobiles necessitated that the defendant nominate an agent with the ability to purchase the subject automobiles from the respective car dealer.

14.    That the Plaintiff, and the defendant entered into a contractual agreement on, or around September 30, 2015, in satisfaction of the formal requirements of UCC 2-201, in which the Plaintiff was to produce a buyer's order/purchase agreement/bill of sale/contract facilitating the acquisition of a 2016 Porsche 911 GT3 RS automobile.

15. That the Agreement further requires, "Buyer agrees to hold the consideration due the Seller in trust for the Seller's exclusive benefit upon receipt by the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle. Buyer agrees to remit to Seller, or its agents or assigns, within forty-eight (48) hours of receipt by the Buyer, or its agents or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$7,088.00** held in trust plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of the signing of this Agreement" [Exhibit P, paragraph two (2)].

16.    That the Agreement further requires, "Buyer agrees to pay the sales price of MSRP + $68,000.00 to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or

delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point"
[Exhibit P, paragraph four (4)].

17.   That the Agreement further requires, "Buyer agrees that in the event that there is a difference in
price, discounted from the price herein mentioned, negotiated by and between the Seller and the car
dealer and the above-mentioned price of MSRP + $68,000.00 plus any applicable luxury tax, registration,
car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the
mandates of the above paragraph 2 [Exhibit P, paragraph five (5)].

18.      That the Agreement further provides, "In the event the Buyer does not comply with the terms
and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the
Buyer is required to make a payment to the Seller of Seventy-Five Thousand, Nine Hundred Eighty
Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said
noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants,
and affirms that the aforementioned  liquidated damages payment to the Seller does not represent a
penalty" [Exhibit P, paragraph nine (9)].

19.   That the Agreement at paragraph six (6) provides, "The Seller may within thirty (30) days of its
tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in
paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender
the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in
specification as the automobile specification in the instant transaction.

a)      The second automobile transaction shall be executed pursuant to the very same terms, and
conditions as the first transaction.

b)      The second automobile must be the same make, model, and year as the automobile transacted
in the first transaction except where the manufacturer has introduced a later/newer model in which
case the later/newer model may be substituted as the subject automobile of the **buyer's
order/purchase agreement/bill of sale/contract** tendered by the Seller.

The second automobile transaction does not require the signing of an additional contract by the Seller,
or Buyer identified herein."[Exhibit P, paragraph six (6)]

20.     That the Plaintiff identified a series of 2016 Porsche 911 GT3 RS automobiles to fulfill its contractual obligation to the defendant however the defendant refused to move forward to complete the proposed transaction at the contractually agreed price attempting initially to negotiate a lower transaction price as evinced by Exhibit Y before proclaiming that he would pay the previously agreed price as evinced by Exhibit Z.

21.     That the Plaintiff, and the defendant entered into a second contractual agreement on, or around November 23, 2015, in satisfaction of the formal requirements of UCC 2-201, in which the Plaintiff was to produce a buyer's order/purchase agreement/bill of sale/contract facilitating the acquisition of a 2016 McLaren 675LT automobile.

22.  That the Second Agreement further requires, "Buyer agrees to hold the consideration due the Seller in trust for the Seller's exclusive benefit upon receipt by the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle. Buyer agrees to remit to Seller, or its agents or assigns, within forty-eight (48) hours of receipt by the Buyer, or its agents or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$5,088.00** held in trust plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of the signing of this Agreement" [Exhibit Q, paragraph two (2)].

23.     That the Second Agreement further requires, "Buyer agrees to pay the sales price of MSRP + $5,000.00 to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point" [Exhibit Q, paragraph four (4)].

24.     That the Second Agreement further requires, "Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $5,000.00 plus any applicable luxury tax,

registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2 [Exhibit Q, paragraph five (5)].

25.   That the Second Agreement further provides, "In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Five Thousand, Nine Hundred Eighty Dollars as partial liquidated damages, to include but not limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned  liquidated damages payment to the Seller does not represent a penalty" [Exhibit Q, paragraph nine (9)].

26.   That the Second Agreement at paragraph six (6) provides, "The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a.      The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.

b.      The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.

c.      The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein."[Exhibit Q, paragraph six (6)]

27.   That upon the signing of the second agreement, the Plaintiff worked concurrently to satisfy the contractual obligations of each contract however during communication with the defendant regarding the second agreement, the Plaintiff became concerned about the defendant's fidelity, and reliability as a businessman.

28.  That the defendant Charles Gray belatedly informed the Plaintiff of the desire to submit an MSO order to McLaren for a special color, Pale Blue Metallic, and specific carbon fiber options since the Plaintiff had a deposit with a McLaren dealer that allowed the Plaintiff to submit an order to specify color, and options.

29.      That the defendant comes from a family that owns, or owned automobile dealerships.

30. That the defendant knew, or should have known that his rather obtuse requested options would require advanced preparation from McLaren.

31.      That the defendant submitted not less than two (2) iterations of purported "MSO Specifications" for the subject 2016 McLaren 675LT automobile in a doomed effort to acquire a unique 2016 McLaren 675LT [Exhibits R, and S].

32.  That the defendant nominated Amazon Leasing, Inc. as his agent to acquire the subject 2016 McLaren 675LT, and the Plaintiff promptly submitted his tender pursuant to the second contractual agreement [Exhibit T].

33.      That the Plaintiff submitted the defendant's order specifications as a good faith gesture since the contract which is the subject matter of the instant action required the defendant to reimburse the earnest money expended by the Plaintiff to secure the defendant's right to purchase a 2016 McLaren 675LT within seventy-two (72) hours of signing the subject contract.

34.  That the defendant failed, or refused to reimburse the Plaintiff for the deposit tendered to the car dealer despite promising to do so, and receiving the Plaintiff's wire transfer instructions.

35.  That despite the Plaintiff's efforts to submit the defendant's order specifications, the Plaintiff was not contractually obligated to produce a 2016 McLaren 675LT with special options since the defendant's desire to order such a specially optioned vehicle was belatedly conveyed to the Plaintiff, and in any event subject to the availability of the special options from McLaren.

36.  That upon information, and belief, McLaren is a low volume, specialty super-car manufacturer with annual production of less than five thousand (5000) units.

37.  That upon information, and belief, the McLaren 675LT is a limited production vehicle with a guaranteed maximum production of five hundred (500) units.

38.     That the defendant stated in an email message to the Plaintiff that his second color choice was Onyx.

39.     That the Plaintiff submitted the defendant's requested options however the franchise McLaren dealer informed the Plaintiff that McLaren did not have the required lead time to build such a very specifically configured McLaren 675LT.

40.  That on or around the 2nd of December, 2015, after making several telephone calls, and sending several email messages to the defendant, the Plaintiff sent via email, and first class mail the first of a series of letters to the defendant which in the first instance sought reasonable assurance of performance [Exhibit U] as suggested by UCC 2-609.

41.     That on or around the 14th of December, 2015, after making several telephone calls, and sending several email messages to the defendant, the Plaintiff sent via email, and first class mail a second letter to the defendant informing the defendant of the requirement to submit alternate options, and seeking reasonable assurance of performance [Exhibit V].

42.  That on or around the 28th of December, 2015, after making several telephone calls, and sending several email messages to the defendant, the Plaintiff sent via email, and first class mail a third letter to the defendant providing the defendant with the Plaintiff's tender of the *buyer's order/purchase agreement/bill of sale/contract* required pursuant to the contractual agreement entered into the by the Plaintiff, and the defendant [Exhibits R, and W].

43.     That on or around the 30th of December, 2015, after making several telephone calls, and sending several email messages to the defendant, the Plaintiff sent via email, and first class mail a third letter to the defendant noticing the defendant of the Plaintiff's intention to tender a second *buyer's order/purchase agreement/bill of sale/contract* as allowed pursuant to paragraph six (6) of the contractual agreement entered into the by the Plaintiff, and the defendant [Exhibit X].

44.     That the defendant has failed, or refused to respond to email messages, telephone messages left, or the aforementioned letters sent by the Plaintiff to the defendant, and has therefore failed to both seasonably reject the Plaintiff's tender, and to particularize as required by UCC 2-602, and UCC 2-605 respectively.

45.  That despite submitting the appropriate tender pursuant to the second contractual agreement, the defendant has failed, or refused to pay the consideration due the Plaintiff.

46.  That due to the defendant's dilatory conduct of his business affairs, and the anticipatory repudiation, or breach of contract by the defendant, the Plaintiff suffered economic harm, and financial losses.

47.  That the Plaintiff contacted John McKinnon in an attempt to convey the urgency of the situation to the defendant however John McKinnon informed the Plaintiff that the messages were conveyed to the defendant but that the defendant was non-committal regarding responding to the Plaintiff's overtures.

48.  That due to the defendant Charles Gray's dilatory conduct regarding the Second Agreement, the Plaintiff was extremely cautious regarding the First Agreement.

49.  That in lieu of having the Plaintiff's reputation tarnished in the market place, the Plaintiff proceeded to identify several 2016 Porsche 911 GT3 RS automobiles before submitting the requisite tender of the **buyer's order/purchase agreement/bill of sale/contract** however the defendant responded suggesting that we would pay in the aggregate approximately forty-five thousand dollars ($45,000.00) less than the contract required [Exhibits P, and Y].

50.  That the defendant's response represents either anticipatory repudiation of contract, or breach of contract since the agreed aggregate transaction price for the 2016 Porsche 911 GT3 RS was seventy-five thousand eighty-eight dollars ($75,088.00) [Exhibit P].

51.  That despite the tender of the **buyer's order/purchase agreement/bill of sale/contract** for the 2016 McLaren 675LT, the defendant failed, or refused to remit the consideration to the Plaintiff due pursuant to the Second Agreement [Exhibit R].

52.  That in the short business relationship with the defendant Charles Gray, the defendant has breached, or repudiated each contractual agreement that he signed [Exhibits P, and Q].

53.  That as direct, and proximate cause of the defendant's anticipatory repudiation, or breach of the two (2) contracts, the Plaintiff sustained incalculable monetary damage.

## AS AND FOR THE FIRST CAUSE OF ACTION

## ANTICIPATORY REPUDIATION, OR BREACH OF CONTRACT

54.     That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if more fully set forth herein.

55.     That the defendant failed, or refused to either pay, or facilitate the payment of the amount due the franchise McLaren car dealer for purposes of the subject contract, as required by paragraphs four (4), and five (5) of Exhibit Q.

56.     That the defendant failed, or refused to either pay, or facilitate the payment of the consideration due the Plaintiff as required by paragraphs two (2), and five (5) of Exhibit Q.

57. That the defendants failure, or refusal to comply with paragraphs two (2), four (4), and five (5) of the contract which is the subject matter of the instant action represents anticipatory repudiation of the contract, or breach of contract.

58.     That upon information, and belief, the Uniform Commercial Code at article 2-609 requires that a demand for reasonable assurance of performance be responded to within thirty (30) days of receipt by the recipient however the defendant has failed, or refused to respond as of this writing.

59.     That the defendant is now liable to the Plaintiff for anticipatory repudiation of contract, or breach of contract.

60.      That despite the Plaintiff's repeated attempts to consummate a transaction, the final response from the defendant via email where the words "sue me"[Exhibit 1].

61.     That as a reasonable result of the defendant's anticipatory repudiation of contract, or breach of contract, the Plaintiff has sustained liquidated damages in the amount of $75,980.00 as agreed by the mutual consent of the Plaintiff, and the defendant.

## AS AND FOR THE SECOND CAUSE OF ACTION

## ANTICIPATORY REPUDIATION, OR BREACH OF CONTRACT

62.     That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if more fully set forth herein.

63.     That the Plaintiff provided timely notice of its intention to tender a second buyer's order/purchase agreement/bill of sale/contract to the defendant as allowed pursuant to paragraph six (6) of the contract which is the subject matter of the instant action [Exhibit X].

64.     That the defendant has failed, or refused to respond to the Plaintiff's most recent letter.

65.   That the Plaintiff was willing, and able to produce the requisite tender however given the previous history of the defendant being dilatory, and unresponsive, the Plaintiff feared that to have yet another franchise McLaren  car dealer, for purposes of the subject contract, prepare the buyer's order/purchase agreement/bill of sale/contract would only serve to damage the Plaintiff's professional relationship, and reputation with a franchise McLaren car dealer leading to further financial damage to the Plaintiff.

66.   That the defendant is liable to the Plaintiff for anticipatory repudiation, or breach of contract by failing, or refusing to perform his contract obligation after being noticed by the Plaintiff of the intention to tender a second buyer's order/purchase agreement/bill of sale/contract.

67.     That as a reasonable result of the defendant's anticipatory repudiation of contract, or breach of contract, the Plaintiff has sustained compensatory damages of not less than $10,088.00.

## AS AND FOR THE THIRD CAUSE OF ACTION

## ANTICIPATORY REPUDIATION, OR BREACH OF CONTRACT

68.     That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if more fully set forth herein.

69.   That the Plaintiff's brief history with the defendant caused the Plaintiff to first identify conforming 2016 Porsche 911 GT3 RS automobiles before tendering the consideration due the defendant pursuant to the First Contract, Exhibit P.

70.   That the defendant's response, Exhibit Y,. confirmed the Plaintiff's concern regarding the defendant's willingness to honor the contract.

71.   That the defendant Charles Gray ultimately refused to pay the aggregate amount agreed to in the contract, annexed hereto as Exhibit P.

72.   That the defendant Charles Gray's refusal to pay the aggregate amount agreed to, and the consideration due the Plaintiff represents either anticipatory repudiation of contract, or breach of contract.

73.   That despite the Plaintiff's repeated attempts to consummate a transaction, the final response from the defendant via email where the words "sue me"[Exhibit 1].

74.   That the defendant Charles Gray is now liable to the Plaintiff for either anticipatory repudiation of contract, or breach of contract.

75.   That as a reasonable result of the defendant's anticipatory repudiation of contract, or breach of contract, the Plaintiff has sustained liquidated damages in the amount of $75,980.00 as agreed by the mutual consent of the Plaintiff, and the defendant.

## LIQUIDATED DAMAGES

76.   That the Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if more fully set forth herein.

77.   That the defendant Charles Gray negotiated the terms of the subject contracts, including but not limited to the liquidated damages clauses, with the Plaintiff.

78.   That the Plaintiff, and the defendant Charles Gray, agreed to the liquidated damages amount pled in the first, and third causes of action after arms length negotiation.

79.   That the liquidated damages amount agreed to by the parties represents an estimate, prior to signing the respective contracts, of the monetary damage the Plaintiff would reasonably experience in the event of anticipatory repudiation of contract, or breach of contract by the defendant.

80.   That the defendant/Buyer waived their right to contest the enforceability of the liquidated damages clause(s) in paragraph fourteen (14) of the subject contracts.


WHEREFORE, the Plaintiff demands judgment against the defendants with interest from March 2, 2016, together with costs and disbursements of this action.

First Cause of Action – Anticipatory Repudiation of Contract, or Breach of Contract

a.   Liquidated Damages - $75,980.00

Second Cause of Action – Anticipatory Repudiation of Contract, or Breach of Contract

    a.   Compensatory Damages -      not less than $10,088.00

    b.   Incidental Damages - $1,575.00

Third Cause of Action – Anticipatory Repudiation of Contract, or Breach of Contract

    a.   Liquidated Damages - $75,980.00

Dated: February 14, 2020

Lawrenceville, Georgia 3004

By:    _____

               Renzer Bell

           C / O Rodney Finkley

    1957 Shaker Falls Lane , Lawrenceville, Georgia 30045

To Defendants:

Charles Gray
3574 Multiview Drive
Los Angeles, California 90068

# EXHIBIT P

## ASSIGNMENT OF CONTRACT OF SALE - MOTOR VEHICLE

**1.** For the consideration **of $7,088.00** plus other good and valuable consideration, **RENZER BELL** (the "Seller"), does hereby sell, assign and transfer to **CHARLES GRAY** (the "Buyer"), whose address is 3574 Multiview Drive, Los Angeles, California 90068, its right to purchase the following described motor vehicle (the "Vehicle") :

Make:_____PORSCHE_____
Model:_____911 GT3 RS_____
Year:            2016
VIN  [to be provided by the car dealer]

2. Buyer agrees to hold the consideration due the Seller in trust for the Seller's exclusive benefit upon receipt by the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle. Buyer agrees to remit to Seller, or its agents or assigns, within forty-eight (48) hours of receipt by the Buyer, or its agents or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$7,088.00** held in trust plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of the signing of this Agreement.

3. Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller.

4. Buyer agrees to pay the sales price of MSRP + $68,000.00   to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point.

5. Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $68,000.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.

6. The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a)        The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.
b)        The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.
The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein.

7. Buyer will not hold Seller liable for any damages or breach of this agreement if the car dealer is unwilling or unable to deliver the Vehicle referred to in paragraph 1, and/or if the car dealer breaches its agreement with the Seller, and/or for any acts of the car dealer and/or third parties.

a) In the event the Buyer does not comply with the terms and conditions set forth in the above paragraph 4, Buyer agrees and warrants that any and all sanctions and/or charges levied by the car dealer because of said noncompliance shall be borne by the Buyer.

8. The Vehicle is being transferred to Buyer on an "AS IS" basis, with no warranties, express or implied, by Seller, as to the condition of the Vehicle.

9. In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Five Thousand, Nine Hundred Eighty Dollars as partial liquidated damages, to include but not

limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty.

10. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

11. This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts.

12. This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written.

13. The undersigned parties acknowledge, accept and will unconditionally abide by all of the terms and conditions of this Agreement.

14. The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein.

15. The Buyer, and Seller consent to freely speak to each other via recorded telephone(s) as is the normal practice in commodities, and securities markets.

16. Facsimile signatures shall be deemed originals for the purposes of this Agreement.

17. The provisions of this contract are binding upon one (1) Buyer, or multiple Buyers as identified in paragraph one (1) of this contract.

18. The parties mutually covenant, represent, warrant, and agree that it is their mutually intent, and bargain which goes to the very essence of this entire agreement that the monetary payments, obligations, and liabilities assumed set forth herein for the benefit of the parties shall be considered for the purposes of Federal Bankruptcy Law exempt from discharge, and non-dischargeable in bankruptcy.

19. In the event of a bankruptcy filing, all parties agree, and covenant to sign a reaffirmation in compliance, and conformity with the Federal Bankruptcy Code.

**CHARLES GRAY**

By: _____

Authorized Signatory – Charles Gray

Date: 9 - 30 - 2015

**RENZER BELL**

By: _____

Date: September 30, 2015

# EXHIBIT Q

## ASSIGNMENT OF CONTRACT OF SALE - MOTOR VEHICLE

**1.** For the consideration **of $5,088.00** plus other good and valuable consideration, **RENZER BELL** (the "Seller"), does hereby sell, assign and transfer to **CHARLES GRAY** (the "Buyer"), whose address is 3574 Multiview Drive, Los Angeles, California 90068, its right to purchase the following described motor vehicle (the "Vehicle") :

    Make:_____McLaren_____
    Model:_____675LT_____
    Year:_____2016
    VIN   [to be provided by the car dealer]

**2.** Buyer agrees to hold the consideration due the Seller in trust for the Seller's exclusive benefit upon receipt by the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle. Buyer agrees to remit to Seller, or its agents or assigns, within forty-eight (48) hours of receipt by the Buyer, or its agents or assigns, of the **buyer's order/purchase agreement/bill of sale/contract** from the Seller or car dealer, of said Vehicle the above mentioned **$5,088.00** held in trust plus any and all amounts due pursuant to paragraph 5 below. Buyer agrees to reimburse Seller whatever monies Seller has disbursed to car dealer to secure the purchase of the Vehicle described in paragraph 1 above within seventy-two (72) hours of the signing of this Agreement.

**3.** Buyer agrees and warrants that it and/or its agents or assigns will not under any circumstances contact or communicate with the car dealer of the Vehicle described in the above paragraph 1 unless Buyer receives specific written authorization from the Seller. Buyer further agrees and warrants that the terms and conditions of this agreement are confidential and that it will not, under any circumstances, disclose the terms and conditions of this agreement to any person and/or any entity unless Buyer receives specific written authorization from the Seller.

**4.** Buyer agrees to pay the sales price of MSRP + $5,000.00   to the car dealer plus any applicable luxury tax, registration, car dealer fees and title fees within two (2) business days of the car dealer's notification to Seller that the Vehicle is available for pickup and/or delivery and acknowledges that it understands that the sales price agreed to is F.O.B. shipping point.

**5.** Buyer agrees that in the event that there is a difference in price, discounted from the price herein mentioned, negotiated by and between the Seller and the car dealer and the above-mentioned price of MSRP + $5,000.00 plus any applicable luxury tax, registration, car dealer fees and title fees, the Buyer agrees to remit said difference in price to Seller pursuant to the mandates of the above paragraph 2.

**6.** The Seller may within thirty (30) days of its tender to the Buyer of the **buyer's order/purchase agreement/bill of sale/contract** as required above in paragraph two (2) notify the Buyer that the Seller is exercising its right, hereby established, to tender the **buyer's order/purchase agreement/bill of sale/contract** for a second automobile similar in specification as the automobile specification in the instant transaction.

a)      The second automobile transaction shall be executed pursuant to the very same terms, and conditions as the first transaction.
b)      The second automobile must be the same make, model, and year as the automobile transacted in the first transaction except where the manufacturer has introduced a later/newer model in which case the later/newer model may be substituted as the subject automobile of the **buyer's order/purchase agreement/bill of sale/contract** tendered by the Seller.
The second automobile transaction does not require the signing of an additional contract by the Seller, or Buyer identified herein.

**7.** Buyer will not hold Seller liable for any damages or breach of this agreement if the car dealer is unwilling or unable to deliver the Vehicle referred to in paragraph 1, and/or if the car dealer breaches its agreement with the Seller, and/or for any acts of the car dealer and/or third parties.

a) In the event the Buyer does not comply with the terms and conditions set forth in the above paragraph 4, Buyer agrees and warrants that any and all sanctions and/or charges levied by the car dealer because of said noncompliance shall be borne by the Buyer.

**8.** The Vehicle is being transferred to Buyer on an "AS IS" basis, with no warranties, express or implied, by Seller, as to the condition of the Vehicle.

**9.** In the event the Buyer does not comply with the terms and conditions set forth in the above paragraphs 2, 3, 4, 5, or 7, Buyer agrees and warrants that the Buyer is required to make a payment to the Seller of Seventy-Five Thousand, Nine Hundred Eighty Dollars as partial liquidated damages, to include but not

limited to attorneys fees, for said noncompliance with the aforementioned paragraphs 2, 3, 4, 5, or 7. The Buyer further agrees, warrants, and affirms that the aforementioned liquidated damages payment to the Seller does not represent a penalty.

10. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable.  If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

11. This Agreement shall be governed by and construed under the laws of the State of New York, except for its conflict of laws principles. Buyer consents and agrees that all legal proceedings, including but not limited to oral depositions, relating to the subject matter of this Agreement shall be maintained/conducted in courts sitting within the State of New York in Queens, Kings or New York County, and Buyer consents and agrees that jurisdiction and venue for such proceedings shall lie exclusively with such courts.

12. This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written.

13. The undersigned parties acknowledge, accept and will unconditionally abide by all of the terms and conditions of this Agreement.

14. The Buyer unconditionally waives by signing this contract its right, if any, to contest the enforceability of the liquidated damages clause as an affirmative defense, or otherwise refuse to pay the agreed liquidated damages amount contained herein.

15.  The Buyer, and Seller consent to freely speak to each other via recorded telephone(s) as is the normal practice in commodities, and securities markets.

16. Facsimile signatures shall be deemed originals for the purposes of this Agreement.

17. The provisions of this contract are binding upon one (1) Buyer, or multiple Buyers as identified in paragraph one (1) of this contract.

18. The parties mutually covenant, represent, warrant, and agree that it is their mutually intent, and bargain which goes to the very essence of this entire agreement that the monetary payments, obligations, and liabilities assumed set forth herein for the benefit of the parties shall be considered for the purposes of Federal Bankruptcy Law exempt from discharge, and non-dischargeable in bankruptcy.

19. In the event of a bankruptcy filing, all parties agree, and covenant to sign a reaffirmation in compliance, and conformity with the Federal Bankruptcy Code.

CHARLES GRAY

By: _____
Authorized Signatory – Charles Gray
Date: _____
11-23-2015

RENZER BELL

By: _____
Date: _____
November 23, 2015

# EXHIBIT R

Re: We Returned Your Telephone Call Earlier This Evening

**Sent By:** Charlie Gray   **On:** Nov 11/24/15 8:54 PM

**To:** Intercambio

"Charlie Gray"
+ Add to Address Book

📷 IMG_6714.jpg (59.1 KB) Download | Remove     📷 IMG_6715.jpg (48.8 KB) Download | Remove

📷 View all images
🗂 Download all attachments as zip file
📎 Remove all attachments

675LT Coupe:

Pale Blue Metallic MSO Defined Exterior Color
Chris Goodwin Package - Change calipers to polished silver and have trim in pale blue (including all stitching in pale blue) instead of orange.
Stealth Badging
Soft Close Doors
Extended Carbon Fiber Interior Upgrade
Black seat belts
Pirelli Trofeo R Tires
Satin Black Super Lightweight 10 spoke Wheels
Meridian 10 Speaker Sound System Upgrade
Front and Rear Parking Sensors with Camera
Vehicle Lift
Dual Zone Climate Control
Car Cover
Carbon Fiber Mirror Arms
Carbon Fiber Vent Bezels
MSO Defined Satin Black Painted Switches and Start Button
ALL 675LT Badging to pale blue instead of orange

Emily Hunt is the contact at MSO (McLaren Special Operations)

Pale blue metallic McLaren F1 chassis 036 attached.

Charlie Gray

On Tuesday, November 24, 2015, Intercambio <gjrad@comcast.net> wrote:
Calling now........

# EXHIBIT S

"Charlie Gray"
+ Add to Address Book

**Re: Immediate Attention Required**

**Sent By: Charlie Gray   On:** Dec 12/09/15 5:15 PM

To: Intercambio

Hello-

PLEASE CHANGE EXTERIOR COLOR TO MSO AMETHYST (FROM P1)

Please include these carbon options

Exterior Carbon fibre package
Door mirror casings in Carbon fibre
Side intakes in Carbon fibre
Extended Carbon Fiber Interior Upgrade
Carbon Fibre wheel arches

Please include these standard options

Stealth Badging
Soft Close Doors
FULL ALCANTARA INTERIOR IN CARBON BLACK (Please check feasibility of MATCHING AMETHYST STITCHING)
Electrically adjustable steering column
Black seat belts
Pirelli Trofeo R Tires
Satin Black SuperLightweight 10 spoke Wheels
Polished silver calipers
Meridian 10 Speaker Sound System Upgrade
Front and Rear Parking Sensors with Camera
Vehicle Lift
Dual Zone Climate Control
Car Cover

MSO Defined Satin Black Painted Switches and Start Button
ALL 675LT Badging to Amethyst instead of orange

Please include these MSO Carbon Fibre Options

Carbon fibre engine cover and plenum
Carbon fibre mirror arms
Carbon fibre vent bezels

# EXHIBIT T

Ptg. 6/15

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

DEAL  928063

Dealer Number 097-947032    Contract Number _____    R.O.S. Number _____    Stock Number NBG675276

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| AMAZON LEASING INC. 11501 PRESILLA ROAD CAMARILLO CA 93012 VENTURA COUNTY | | THE AUTO GALLERY 9022 WILSHIRE BLVD BEVERLY HILLS, CA 90211 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2016 | MCLAREN 675LT COUPE | 65 | SBM11RAAOGW675276 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 0.00 % | $ 0.00 (e) | $ 394512.00 | $ 394512.00 (e) | $ 394512.00 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 1 | 394512.00 | Monthly beginning 02/11/2016 |
| N/A | N/A | N/A |
| One final payment | | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

**1. Total Cash Price**

| | | |
|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | $ 391750.00 | (A) |
|    1. Cash Price Vehicle | $ 391750.00 | |
|    2. Cash Price Accessories | $ N/A | |
|    3. Other (Nontaxable) N/A | | N/A |
|      Describe ___N/A___ | $ | N/A |
|      Describe ___N/A___ | $ | N/A |
| B. Document Processing Charge (not a governmental fee) | $ 80.00 | (B) |
| C. Emissions Testing Charge (not a governmental fee) N/A | $ | N/A (C) |
| D. (Optional) Theft Deterrent Device (to whom paid) _____ N/A | $ | N/A (D) |
| E. (Optional) Theft Deterrent Device (to whom paid) _____ N/A | $ | N/A (E) |
| F. (Optional) Theft Deterrent Device (to whom paid) _____ N/A | $ | N/A (F) |
| G. (Optional) Surface Protection Product (to whom paid) N/A | $ | N/A (G) |

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | N/A Mos. | $ N/A |
| Medical N/A | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | $ N/A (a) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

| Buyer X | AMAZON LEASING |
|---|---|
| Co-Buyer X | |
| Seller X | THE AUTO GALLERY |

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

#### Application for Optional Credit Insurance
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | N/A | $ N/A |
| Credit Disability | N/A Mos. | N/A | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A (b) |
| Insurance Company Name N/A | | | |
| N/A | | | |
| Home Office Address N/A | | | |
| N/A | | | |

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the

| | | | |
|---|---|---|---|
| F. (Optional) Theft Deterrent Device (to whom paid) | | $ | N/A (F) |
| G. (Optional) Surface Protection Product (to whom paid) N/A | | $ | N/A (G) |
| H. (Optional) Surface Protection Product (to whom paid) N/A | | $ | N/A (H) |
| I. EV Charging Station (to whom paid) N/A | | $ | N/A (I) |
| J. Sales Tax (on taxable items in A through I) | | $ | N/A (J) |
| K. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (to whom paid) CVR | | $ | 29.00 (K) |
| L. (Optional) Service Contract (to whom paid) N/A | | $ | N/A (L) |
| M. (Optional) Service Contract (to whom paid) N/A | | $ | N/A (M) |
| N. (Optional) Service Contract (to whom paid) N/A | | $ | N/A (N) |
| O. (Optional) Service Contract (to whom paid) N/A | | $ | N/A (O) |
| P. (Optional) Service Contract (to whom paid) N/A | | $ | N/A (P) |
| Q. Prior Credit or Lease Balance paid by Seller to N/A (see downpayment and trade-in calculation) | (e) | $ | N/A (Q) |
| R. (Optional) Gap Contract (to whom paid) N/A | | $ | N/A (R) |
| S. (Optional) Used Vehicle Contract Cancellation Option Agreement | | $ | N/A (S) |
| T. Other (to whom paid) For N/A | | $ | N/A (T) |
| **Total Cash Price (A through T)** | | $ | 391859.00 |

Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

You want to buy the credit insurance.

| N/A | N/A | N/A |
|---|---|---|
| Date | Buyer Signature | Age |
| N/A X | N/A | N/A |
| Date | Co-Buyer Signature | Age |

**2. Amounts Paid to Public Officials**

| | | | |
|---|---|---|---|
| A. Vehicle License Fees ESTIMATE | | $ | 2546.00 (A) |
| B. Registration/Transfer/Titling Fees | | $ | 100.00 (B) |
| C. California Tire Fees | | $ | 7.00 (C) |
| D. Other N/A | | $ | N/A (D) |
| **Total Official Fees (A through D)** | | $ | 2653.00 (2) |

**3. Amount Paid to Insurance Companies**

| | | | |
|---|---|---|---|
| (Total premiums from Statement of Insurance column a + b) | | $ | N/A (3) |
| **4.** ☐ **State Emissions Certification Fee or** ☐ **State Emissions Exemption Fee** | | $ | N/A (4) |
| **5. Subtotal (1 through 4)** | | $ | 394512.00 (5) |

**6. Total Downpayment**

| | | | |
|---|---|---|---|
| A. Agreed Trade-In Value Yr N/A Make N/A Model N/A Odom N/A VIN N/A | | $ | N/A (A) |
| B. Less Prior Credit or Lease Balance (e) | | $ | N/A (B) |
| C. Net Trade-In (A less B) (indicate if a negative number) | | $ | N/A (C) |
| D. Deferred Downpayment | | $ | N/A (D) |
| E. Manufacturer's Rebate | | $ | N/A (E) |
| F. Other N/A | | $ | N/A (F) |
| G. Cash | | $ | N/A (G) |
| **Total Downpayment (C through G)** | | $ | 0.00 (6) |

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1Q above)

**7. Amount Financed (5 less 6)** $ 394512.00 (7)

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1R of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1L, 1M, 1N, 1O, and/or 1P.

| | | |
|---|---|---|
| 1L Company N/A | | |
| Term N/A Mos. or | N/A | Miles |
| 1M Company N/A | | |
| Term N/A Mos. or | N/A | Miles |
| 1N Company N/A | | |
| Term N/A Mos. or | N/A | Miles |
| 1O Company N/A | | |
| Term N/A Mos. or | N/A | Miles |
| 1P Company N/A | | |
| Term N/A Mos. or | N/A | Miles |

Buyer X _____

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: N/A
Amount $ N/A Finance Charge $ N/A
Total $ N/A Payable in
installments of $ N/A N/A
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
**If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:**

☐ **Name of autobroker receiving fee, if applicable:**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____ AMAZON LEASING INC.
Co-Buyer Signs X N/A

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X AMAZON LEASING INC.     X N/A
Buyer        Co-Buyer

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X AMAZON LEASING INC.     Co-Buyer Signs X N/A

**OPTION:** ☐ XX You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A SELLER'S INITIALS

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT PROVIDE COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO

BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A

Amount $ _____ N/A Finance Charge $ _____ N/A

Total $ _____ N/A Payable in _____ N/A

installments of $ _____ N/A $ _____ N/A

from this Loan is shown in item 6D.

**If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:**

☐ Name of autobroker receiving fee, if applicable:

contract contains the entire agreement between you and us about this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

AMAZON LEASING INC.

Buyer Signs X _____

Co-Buyer Signs X _____ N/A

---

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X AMAZON LEASING INC.                    x N/A

Buyer                                     Co-Buyer

---

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X AMAZON LEASING INC.        Co-Buyer Signs X N/A

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A , Year _____ N/A SELLER'S INITIALS _____

---

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:

YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.

FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X AMAZON LEASING INC.                    N/A

---

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X _____                    Co-Buyer Signature X N/A

---

**Notice to buyer: (1)** Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. **(2)** You are entitled to a completely filled in copy of this agreement. **(3)** You can prepay the full amount due under this agreement at any time. **(4)** If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.

Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.

After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X AMAZON LEASING INC.        Co-Buyer Signature X N/A

---

## The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

---

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X AMAZON LEASING INC. Date 12/28/15 Co-Buyer Signature X _____ N/A Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____ Address _____

---

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable if we do one or more of the following: (1) give Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

12/28/15

Guarantor X _____ Date _____ Guarantor X _____ Date _____

Address _____ Address _____

---

Seller Signs THE AUTO GALLERY Date 12/28/15 By X _____ Title MGR.

LAW FORM NO. 553-CA-ARB (REV. 7/13) U.S. PATENT NO. D460,782
©2013 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

# EXHIBIT U

December 2, 2015

Charles Gray
3574 Multiview Drive
Los Angeles, California 90068

<u>Via Email, And First Class Mail</u>

Dear Mr. Gray,

***Time is of the essence!***

We write this letter seeking reasonable assurance of performance.

On or about November 23, 2015, you entered into a contract with the undersigned to secure a 2016 McLaren 675LT.

The undersigned sent several email messages to you requesting the name, address, telephone number, and primary contact for the lessor you intend to use to acquire the subject McLaren 675LT. As of this writing, you have failed to provide the aforementioned requested, and required information.

The undersigned is prepared to tender the consideration required pursuant to the terms of the contract however the aforementioned lessor information is a prerequisite to the undersigned tendering the consideration due pursuant to the contract. Furthermore, your desired specification is going to trigger a request from the car dealer for additional earnest money given the unique vehicle specification you desire.

As of this writing, you have not reimbursed the undersigned for the earnest money tendered to date as required in paragraph two (2) of the contract. The undersigned tendered $5,000.00 to the car dealer for the production number/production allocation which is the subject of the contract.

Upon receipt of the requisite information, and reimbursement of $5,000.00, the undersigned will proceed to amend the order to your production specifications.

Kindly send the reimbursement in the form of cashier's check to the following address:

Renzer Bell
5736 Cleveland Road
Jacksonville, Florida 32209

Kindly provide us with a date certain when your performance due pursuant to the contract will be completed.

***Time is of the essence***! Thank you for your attention, and consideration.

Respectfully,

Renzer Bell, II
(904)766-7312

Encl.

# EXHIBIT V

December 14, 2015

Charles Gray
3574 Multiview Drive
Los Angeles, California 90068

<u>Via Email, And First Class Mail</u>

Dear Mr. Gray,

***Time is of the essence!***

We write this letter seeking reasonable assurance of performance.

On or about November 23, 2015, you entered into a contract with the undersigned to secure a 2016 McLaren 675LT.

Unfortunately, due to the time remaining to the production date, the MSO options including your two (2) color preferences are UNAVAILABLE.

McLaren requires fifteen (15), or sixteen (16) weeks to implement MSO options prior to the actual build date. November 23, 2015, the day you signed the contract would not have given you enough time to specify MSO options for this build slot.

Nonetheless, you have an opportunity to select from the non-MSO colors available.

We have been trying to reach you since late Friday, December 11, 2015 without success. We called you multiple times today once we learned of McLaren's restrictions however you neither answer your telephone nor return the detailed messages left for your.

We need your deposit, and your exterior color selection ***IMMEDIATELY***, or you risk taking the subject McLaren 675LT as it comes.

<u>The deadline for submission of allowable options for your build is **_TODAY_**!</u>

Kindly provide us with a date certain when your performance due pursuant to the contract will be completed including but not limited to remittance of the overdue deposit.

***Time is of the essence***! Thank you for your attention, and consideration.

Respectfully,

Renzer Bell, II
(904) 766-7312

Encl.

# EXHIBIT W

December 28, 2015

Charles Gray
3574 Multiview Drive
Los Angeles, California 90068

<u>Via Email, And First Class Mail</u>

Dear Mr. Gray,

***Time is of the essence!***

Due to your dilatory execution of your contractual responsibilities, the undersigned hereby presents to you an immediately available McLaren 675LT.

Enclosed please find the purchase agreement naming the agent/lessor you nominated, Amazon Leasing, Inc. Additionally, the summary of the equipment is also enclosed for your records.

Finally, Amazon Leasing, Inc. is required to now remit the amount due pursuant to the purchase agreement in order to complete your acquisition of the subject 2016 McLaren 675LT.

When should the undersigned expect to receive the consideration due pursuant to the contract you signed with the undersigned?

This matter requires your immediate attention in order that the losses sustained by the undersigned will be mitigated.

To date you have failed/refused to provide reasonable assurance of performance to the undersigned.

This letter represents the undersigned's final effort to complete the transaction envisioned by the contract you signed.

Thank you for your attention, and consideration.

Respectfully,

Renzer Bell, II
(904)766-7312

Encl.

# EXHIBIT X

December 30, 2015

Charles Gray
3574 Multiview Drive
Los Angeles, California 90068

<u>Via Email, And First Class Mail</u>

Dear Mr. Gray,

***Time is of the essence!***

You are now in possession of the purchase agreement for one (1) 2016 McLaren 675LT naming Amazon Leasing, Inc. as the purchaser, and your agent/lessor.

You are hereby noticed that the undersigned has elected to exercise its option pursuant to the contract dated November 23, 2015 to tender to you the buyer's order/purchase agreement/bill of sale/contract for a second 2016 McLaren 675LT.

The agreed price for the second 2016 McLaren 675LT is MSRP plus <u>$10,088.00</u>.

We have the ability to produce a purchase agreement naming your agent/lessor as the buyer however in light of the sensitive nature of McLaren 675LT transactions, we will not produce the buyer's order/purchase agreement/bill of sale until you take affirmative action.

Kindly notice the undersigned in writing which entity will serve as your agent/lessor for purposes of the second 2016 McLaren 675LT transaction.

Thank you for your attention, and consideration.

Sincerely,

Renzer Bell
(904)766-7312
(904)768-7350

# EXHIBIT Y

**Re: Never Received A Response From You Regarding The 2016 Porsche GT3 RS**

Sent By: Charlie Gray   On: Feb 02/19/16 6:50 PM

"Charlie Gray"
+ Add to Address Book

To: 1031

Im interested, but only at 30-45 over. Cant pay more as the market has collapsed on these cars.

Happy to do it, but only in that range.

C

Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?

"Charlie Gray"
+ Add to Address Book

Sent By: Charlie Gray  On: Mar 03/02/16  6:28 PM
To: 1031

DO YOU NOT LISTEN?

I contracted for a BLACK PTS at 75 over, which I am happy to consummate a deal on. NO WAY AM I GOING TO AGREE ON A WHITE CAR ABOVE MARKET VALUE, WHEN I NEVER AGREED ON A WHITE CAR, NOR WAS A WHITE CAR EVER MENTIONED

I will settle for a 675 LT in BLACK, CHICANE GREY, OR ANY SILVER for 5 over

Charlie Gray

On Wed, Mar 2, 2016 at 5:09 PM, 1031 <1031exchangetrust@comcast.net> wrote:
What entity do you wish to use to acquire the vehicles you contracted to purchase?

We both know that I have NO interest in a non BLACK RS, as that was what we agreed.

RE the 675t, I am interested, but only if it is NOT the volcano yellow car you had suggested it might be. Black, Chicane Grey, ANY kind of silver would work present to our deal. Preferably Black. Let me know.

Charlie Gray

From: "Charlie Gray" <charlie@aditadjacent.com>
To: "1031" <1031exchangetrust@comcast.net>
Sent: Wednesday, March 2, 2016 5:03:53 PM
Subject: Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?

On Wed, Mar 2, 2016 at 3:11 AM, 1031 <1031exchangetrust@comcast.net> wrote:

Good morning,

Time is of the essence!

We have available a 2016 Porsche 911 GT3 RS pursuant to the contract you signed on September 30, 2015. On the 2016 McLaren 675LT transaction, you indicated that you would use Amazon Leasing, Inc. to acquire the subject vehicle.

What entity are you using to acquire this 2016 Porsche 911 GT3 RS?

Additionally, please provide your new home address since we received return mail from the address you provided, and was memorialized in the aforementioned contract.

Thank you for your attention, and consideration.

Sincerely,

R Bell

# EXHIBIT Z

**Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?**

Sent By: Charlie Gray   On: Mar 03/02/16 6:28 PM

To: 1031

"Charlie Gray"
+ Add to Address Book

DO YOU NOT LISTEN?

I contracted for a BLACK PTS at 75 over, which I am happy to consummate a deal on. NO WAY AM I GOING TO AGREE ON A WHITE CAR ABOVE MARKET
VALUE, WHEN I NEVER AGREED ON A WHITE CAR. NOR WAS A A WHITE CAR EVER MENTIONED

I will settle for a 675 LT in BLACK, CHICANE GREY, OR ANY SILVER for 5 over

Charlie Gray

On Wed, Mar 2, 2016 at 5:09 PM, 1031 <1031exchangetrust@comcast.net> wrote:
What entity do you wish to use to acquire the vehicles you contracted to purchase?

**From:** "Charlie Gray" <charlie@adultadjacent.com>
**To:** "1031" <1031exchangetrust@comcast.net>
**Sent:** Wednesday, March 2, 2016 5:03:53 PM
**Subject:** Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?

We both know that I have NO interest in a non BLACK RS, as that was what we agreed.

RE the 675t, I am interested, but only if it is NOT the volcano yellow car you had suggested it might be. Black, Chicane Grey,
ANY kind of silver would work present to our deal. Preferably Black. Let me know.

Charlie Gray

On Wed, Mar 2, 2016 at 3:11 AM, 1031 <1031exchangetrust@comcast.net> wrote:

Good morning,

Time is of the essence!

We have available a 2016 Porsche 911 GT3 RS pursuant to the contract you signed on September 30, 2015. On the 2016
McLaren 675LT transaction, you indicated that you would use Amazon Leasing, Inc. to acquire the subject vehicle.

What entity are you using to acquire this 2016 Porsche 911 GT3 RS?

Additionally, please provide your new home address since we received return mail from the address you provided, and was
memorialized in the aforementioned contract.

Thank you for your attention, and consideration.

Sincerely,

R Bell

# EXHIBIT 1

**Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?**
Sent By: Charlie Gray  On: Mar 03/02/16 9:05 PM

"Charlie Gray"
+ Add to Address Book

To: 1031

Sue me

Thank you

Charlie Gray

On Wednesday, March 2, 2016, 1031 <1031exchangetrust@comcast.net> wrote:
That is not how the contracts read. We produced a 675LT that you failed to perform over two (2) months ago. See the attached document(s).

**From:** "Charlie Gray" <charlie@adultadjacent.com>
**To:** "1031" <1031exchangetrust@comcast.net>
**Sent:** Wednesday, March 2, 2016 5:52:38 PM
**Subject:** Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?

Why would I purchase cars in colors I don't want. Produce a black no mi RS, with a vin, and a 675lt in black, chicane, or any of the silvers, with a vin, and I will gladly give you the mechanism through which I will purchase the cars

On Wednesday, March 2, 2016, 1031 <1031exchangetrust@comcast.net> wrote:
All I need to know is the name of the entity you plan to use in order that we have the purchase agreement appropriately prepared.

**From:** "Charlie Gray" <charlie@adultadjacent.com>
**To:** "1031" <1031exchangetrust@comcast.net>
**Sent:** Wednesday, March 2, 2016 5:28:25 PM
**Subject:** Re: How Do You Plan To Acquire The 2016 Porsche 911 GT3 RS That We Have Available?

DO YOU NOT LISTEN?

I contracted for A BLACK PTS RS at 75 over, which I am happy to consummate a deal on. NO WAY AM I GOING TO AGREE ON A WHITE CAR ABOVE MARKET VALUE, WHEN I NEVER AGREED ON A WHITE CAR, NOR WAS A WHITE CAR EVER MENTIONED

I will settle for a 675 LT in BLACK, CHICANE GREY, OR ANY SILVER for 5 over

Charlie Gray

On Wed, Mar 2, 2016 at 5:09 PM, 1031 <1031exchangetrust@comcast.net> wrote:
What entity do you wish to use to acquire the vehicles you contracted to purchase?

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018. All rights reserved.

U.S. POSTAGE PAID
PME
JACKSONVILLE, FL
32203
JUN 20 '20
AMOUNT
**$26.35**
R2304H107978-11

UNITED STATES POSTAL SERVICE®

1007

10007

**PRIORITY MAIL EXPRESS®**

VISIT US AT USPS.COM®
Label 11B, Nov 2018

PRESS FIRMLY TO SEAL

United States
Postal Service®

RECEIVED
FEB 24 2020
PRO SE OFFICE

EE 334 651 148 US

**PRIORITY MAIL EXPRESS™**

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)   PHONE ( 904 ) 413-7961

Remzer Bell
c/o Rodney Tinkley
1509 Shaker Fall Lane
Lawrenceville (Georgia) 30043

DELIVERY OPTIONS (CUSTOMER USE ONLY)
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
☐ 10:30 AM Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( 212 ) 805-0115

US District Court
Thurgood Marshall Courthouse
Pro Se Intake Clinic
c/o Ruby Krajick, Room 105
New York, New York

**PRIORITY MAIL EXPRESS**

PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct No.        Federal Agency Acct No. or Postal Service™ Acct. No.

☐ DPO
☐ Military

PO ZIP Code   Scheduled Delivery Date (MM/DD/YY)   Postage
32203        9-20-2020                          $ 26.35

Date Accepted (MM/DD/YY)   Scheduled Delivery Time   Insurance Fee   COD Fee
2-18-2020                 ☐ 10:30 AM ☐ 3:00 PM   $              $

Time Accepted   ☐ AM ☑ PM   10:30 AM Delivery Fee   Return Receipt Fee   Live Animal Transportation Fee
5:06            ☑ PM       $                   $                  $

Special Handling/Fragile   Sunday/Holiday Premium Fee   Total Postage & Fees
$                        $                          $ 26.35

Weight   lbs.   oz.   Flat Rate   ☑   Acceptance Employee Initials
☐ AM ☐ PM

DELIVERY (POSTAL SERVICE USE ONLY)
Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

LABEL 11-B, JULY 2018

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

**PRIORITY MAIL EXPRESS®**

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

PS10001000006

PEEL FROM THIS CORNER

EP13F

♻ This envelope is made from post-consumer waste. Please recycle - again.