UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
RENZER BELL,                                                       :
                                                                   :
                              Plaintiff,                           :
                                                                   :        20 Civ. 1588 (JPC) (SLC)
                    -v-                                             :
                                                                   :        OPINION AND ORDER
CHARLES GRAY,                                                      :
                                                                   :
                              Defendant.                           :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Renzer Bell is proceeding *pro se* and has been granted *in forma pauperis* status in this breach of contract dispute.  Dkts. 2 ("Compl."), 3.  He principally alleges that Defendant Charles Gray reneged on agreements to purchase two high-end automobiles.  Gray now moves to dismiss Bell's Complaint on various grounds, while Bell has moved for leave to amend his Complaint.  For the reasons that follow, the Court finds that Bell submitted inaccurate information about his financial condition on his *in forma pauperis* application.  The Court therefore grants Gray's motion to dismiss without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A).  Because the grounds for that dismissal cannot be cured by any amendment to the Complaint, the Court also denies Bell's motion to amend.

## I.  Background

### A.  The Dispute

      Bell describes himself as "a merchant" who is "actively engaged in the business of purchasing and trading a variety of valuable commodities."  Compl. ¶ 3. Bell alleges that, in late 2015, he and Gray entered into two contracts contemplating Gray's purchase of high-end

automobiles, with Bell essentially to act as a broker.  *Id.* ¶¶ 14, 21.  The first contract, dated September 30, 2015, involved the potential purchase of a 2016 Porsche 911 GT3 RS, *id.*, ¶ 14, Exh. P, and the second, dated November 23, 2015, involved the potential purchase of a 2016 McLaren 675LT, *id.* ¶ 21, Exh. Q.  Both contracts, as alleged, were largely similar, with the primary differences being the exact vehicle make and model, Gray's agreed-upon purchase price, and the fee that Bell would receive upon consummation of the transaction.  *Id.*, Exhs. P, Q.[1]  Both contracts also allegedly included provisions stating that, in the event Gray failed to consummate a properly tendered transaction, Bell was entitled to $75,980 in liquidated damages.  *Id.* ¶¶ 18, 25, Exhs. P ¶ 9, Q ¶ 9.  Both contracts also allowed Bell, within thirty days of tendering to Gray the contract for purchase of the vehicle, to exercise a right to tender a contract for a second vehicle.  *Id.* ¶¶ 19, 26, Exhs. P ¶ 6, Q ¶ 6.

The parties dispute what happened after executing these contracts.  Bell claims that he arranged for Gray to purchase both cars, but Gray refused to pay for the McLaren or to pay the full agreed-upon price for the Porsche.  *Id.* ¶¶ 20, 34, 45, 49.  Gray, however, maintains that while he emailed Bell the exact specifications he required for the McLaren, Bell was unable to meet those specifications as required to trigger a purchase obligation under their contract.  Dkt. 62 ("Motion") at 4.  Gray similarly contends that while he advised Bell of his required specifications for the Porsche, Bell offered him a different vehicle and did not tender a contract of sale for a vehicle

---

[1] The Porsche contract contemplated Bell receiving $7,088 and the vehicle's seller receiving the manufacturer's suggested retail price plus $68,000 and other fees, Complaint ¶¶ 15-16, Exh. P ¶¶ 1, 4, while the McLaren contract contemplated Gray receiving $5,088 and the vehicle's seller receiving the manufacturer's suggested retail price plus $5,000 and other fees, *id.* ¶¶ 22-23, Exh. Q ¶¶ 1, 4.  Both contracts further provided that, in the event Bell were to negotiate a lower purchase price from the vehicle seller, Bell would receive the difference between the aforementioned contractual purchase price and the actual sales price.  *Id.* ¶¶ 17, 24, Exhs. P ¶ 5, Q ¶ 5.

meeting the desired specifications.  *Id.*  Gray then conveyed in a March 2, 2016 email that he had

no obligation to pay Bell anything under either contract because Bell had failed to tender contracts

for either a Porsche or McLaren that met his required specifications.  Compl., Exhs. Y, Z.  But, for

the reasons that follow, these disputes are immaterial to the Court's dispositions of the pending

motions.

### B.  Procedural History

On February 24, 2020, Bell initiated this action by filing his Complaint, citing this Court's

diversity jurisdiction, *id.* ¶ 1, and bringing three causes of action for "anticipatory repudiation, or

breach of contract," *id.* ¶¶ 54-75.  In short, Bell sues Gray for failing to purchase cars pursuant to

their contracts.  *Id.*  As relief, he seeks liquidated damages in the amount of $75,980 for two of the

causes of action, as well as compensatory damages of at least $10,088 and incidental damages in

the amount of $1,575.  *Id.* at 12-13.

As mentioned, Bell filed this case *in forma pauperis*.  Prior to receiving such status, Bell

submitted a signed "Application to Proceed Without Prepaying Fees or Costs."  Dkt. 1 ("IFP

Application").  Bell signed the IFP Application under penalty of perjury, declaring that the

statements contained therein were true, and acknowledged "that a false statement may result in a

dismissal of [his] claims."  *Id.* at 2; *see also id.* at 1 ("I declare that the responses below are

true . . . .").  In opening paragraph of the Application, Bell "declare[d] that [he was] unable to pay

the costs of these proceedings."  *Id.*  Bell further represented that he had no money "in cash or in

a checking [or] savings . . . account," *id.* ¶ 4, and that he owned no "automobile, real estate, stock,

bond, security, trust, jewelry, art work, or other financial instrument or thing of value, including

any item of value held in someone else's name," *id.* ¶ 5.  He stated that he was unemployed, *id.*

¶ 2, although he had received $9,500 for business consulting over the preceding twelve months.,

*id.* ¶ 3.  Bell wrote, however, that he had "no reliable expectation of future income."  *Id.*  He additionally disclosed that he had monthly expenses in the amounts of $300 for utilities, $400 for food, and $300 for property taxes.  *Id.* ¶ 6.  On March 23, 2020, the Honorable Colleen McMahon, then-Chief Judge of this District, granted Bell's *in forma pauperis* application.  Dkt. 3.[2]

On September 17, 2021, Gray moved to dismiss the Complaint.[3]  *See* Dkt. 61.  Gray advances four independent grounds for dismissal: (1) Bell's allegation of poverty is untrue, requiring dismissal under 28 U.S.C. § 1915(e)(2)(A), Motion at 11-16; (2) subject matter jurisdiction is lacking because the amount-in-controversy threshold of 28 U.S.C. § 1332(a) cannot be met, *id.* at 16-20; (3) Bell has failed to state a plausible claim for breach of contract, *id.* at 20-23; and (4) the Complaint is barred by the statute of limitations, *id.* at 23-24.  The Court gave Bell two extensions to oppose Gray's motion to dismiss.  *See* Dkts. 67, 71.  Eventually, Bell attempted to file an amended complaint, Dkt. 74, which the Court rejected as too late to be permitted as a matter of course under Federal Rule of Civil Procedure 15(a)(1), Dkt. 77.  Bell then moved to amend on January 26, 2022, presenting arguments against dismissal in his motion.  Dkt. 83 ("Motion to Amend").[4]  Gray opposed the Motion to Amend on February 18, 2022.  Dkt. 87.

_____

[2] The case was later reassigned to the Honorable Lorna G. Schofield on March 24, 2020, *see* ECF Minute Entry for Mar. 24, 2020, before being reassigned to the undersigned on September 29, 2020, *see* ECF Minute Entry for Sept. 29, 2020.

[3] On May 23, 2021, Bell sought a default judgment against Gray, Dkt. 42, and the Clerk of Court issued a certificate of default on May 28, 2021, Dkt. 43.  Gray then appeared on July 28, 2021, Dkts. 45-46, and opposed the motion for default judgment, Dkts. 47-49.  The Court vacated the certificate of default on August 18, 2021, Dkt. 57, and later denied Bell's motion for reconsideration of that decision, Dkt. 59.  As revealed during proceedings in this case preceding Gray's appearance, there are strong indications that Gray had not received notice of this litigation.

[4] Even though Bell failed to file a separate opposition to Gray's Motion, his Motion to Amend included arguments for why his Complaint should not be dismissed, including based on false statements in his IFP Application and not meeting section 1332(a)'s amount-in-controversy threshold.  The Court will construe those arguments in Bell's Motion to Amend as presenting an opposition to dismissal.  *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to

## II.  Discussion

As Chief Judge McMahon did for Bell, a court may authorize the commencement of a federal lawsuit without prepayment of filing fees if the person submits a statement of assets and shows the person is unable to pay such fees.  28 U.S.C. § 1915(a)(1).  Such *in forma pauperis* status is a "privilege provided for the benefit of indigent persons."  *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (internal quotation marks omitted); *see Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 344 (1948) (commenting that the *in forma pauperis* "statute was intended for the benefit of those too poor to pay or give security for costs").  While a litigant seeking *in forma pauperis* status "need not demonstrate destitution," the applicant "must demonstrate poverty to qualify."  *Quesada v. Matari*, No. 14 Civ. 970 (AT), 2015 WL 5820969, at *1 (S.D.N.Y. Sept. 15, 2015) (internal quotation marks omitted).

At the same time, it is incumbent on judges to police against fraudulent, false, and misleading *in forma pauperis* applications.  *See id.*  Thus, the relevant statute expressly requires a court to "dismiss the case at any time if [it] determines that . . . the [Plaintiff's] allegation of poverty is untrue."  28 U.S.C. § 1915(e)(2).  "Section 1915(e)(2)(A) serves the purpose of preventing abuse of the judicial system by weeding out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status."  *Vann v. Comm'r of N.Y.C. Dep't of Corr.*, 496 F. App'x 113, 115 (2d Cir. 2012) (internal quotation marks and alterations omitted); *accord Hobbs v. Cnty. of Westchester*, No. 00 Civ. 8170 (JSM), 2002 WL 868269, at *2 (S.D.N.Y. May 3, 2002) (explaining that the purpose of section 1915(e)(2)(A) is "to weed out the litigants who

_____

raise the strongest arguments that they suggest." (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006))).

falsely understate their net worth in order to obtain *in forma pauperis* status" (internal quotation marks omitted)).

Courts have commented that "[n]ot every inaccuracy in an affidavit of poverty, no matter how minimal, should be construed as a false allegation of poverty so as to cause loss of *in forma pauperis* eligibility and dismissal of the complaint." *Waters v. King*, No. 11 Civ. 3267 (JMF), 2012 WL 1889144, at *2 (S.D.N.Y. May 24, 2012) (alteration in original) (quoting *Camp v. Oliver*, 798 F.2d 434, 438 n.3 (11th Cir. 1986)); *see Vann v. Horn*, No. 10 Civ. 6777 (PKC), 2011 WL 3501880, at *1 (S.D.N.Y. Aug. 9, 2011) ("A misrepresentation by a plaintiff as to his or her financial assets is not necessarily fatal to the plaintiff's claims."). The central question for a court to decide is whether a plaintiff's "allegation of poverty is untrue." *Waters*, 2012 WL 1889144, at *2 (quoting *Hobbs*, 2002 WL 868269, at *2).

"Dismissal, even with prejudice, is particularly appropriate when a litigant's misrepresentations manifest bad faith." *Quesada*, 2015 WL 5820969, at *1 (citing *Cuoco*, 328 F. Supp. 2d at 468); *see also Humbach v. Canon*, No. 13 Civ. 2512 (NSR), 2019 WL 1369464, at *3-5 (S.D.N.Y. Mar. 25, 2019) (same). "Bad faith in this context includes deliberate concealment of income." *Vann*, 496 F. App'x at 115. Further, when a litigant "fail[s] to credibly explain or correct his declarations when given an opportunity to do so," dismissal with prejudice is appropriate. *Id.* at 116.

Bell's IFP Application was replete with demonstrably false statements alleging poverty, and he has failed to credibly explain or correct many of them. Significantly, the Court is able to conclude that Bell's allegation of poverty is untrue even without conducting an independent investigation into his financial circumstances, because the falsity of certain statements in his IFP Application is evidenced by his own submissions in this action. For instance, Bell avers in his *pro*

*se* Complaint that he is "a merchant" who is "actively engaged in . . . purchasing and trading a variety of valuable commodities," Compl. ¶ 3, an allegation bolstered by his claims themselves, which concern his involvement in dealing McLaren and Porsche supercars, *id.* ¶¶ 14, 21.  But a merchant who is actively involved in purchasing and trading valuable commodities must have both access to funds, or else he could not purchase those commodities, and an expectation of income, which he would receive in exchange for the commodities he sells.  Thus, Bell's own Complaint, in which he characterized himself as actively engaged in an activity that requires funds and produces income, is inconsistent with his sworn statements in the IFP Application that he had "no reliable expectation of future income," IFP Application ¶ 3, and that he had neither any money nor any other assets, *id.* ¶¶ 4-5.

Indeed, the IFP Application is itself internally inconsistent.  As noted, Bell reported in it that his expenses amount to approximately $1,000 per month.  *Id.* ¶ 6.  And, obviously, to pay those expenses Bell must have secured access to one thousand dollars each month, either through assets already in his possession or through income received over the course of that month.  Since Bell must have had some source for the $1,000 required each month to pay his expenses, his sworn statements that he had neither assets nor expected future income must be untrue.

Similar internal inconsistencies plague the IFP Application's statements regarding real estate.  On the one hand, Bell maintained that he owned no real estate, *id.* ¶ 5; on the other, he also disclosed that he was responsible for paying monthly property taxes, *id.* ¶ 6.  These statements are in obvious tension: since property tax is assessed on the owners of property, an individual who owned no property should owe no property tax.  Moreover, Florida public property assessment records, submitted by Gray, confirm that Bell is the trustee of two trusts that hold properties in

Jacksonville, Florida.  Dkts. 50-1, 50-2.[5]  The first property is identified as a single-family residence at 5736 Cleveland Road, in Jacksonville, Florida, with an assessed value of $151,046 in 2020.  Dkt. 50-1.  In fact, this is the address that Bell has listed for himself in this case and where he has received case-related mailings.  *See* Dkts. 8, 19.  The second property, also listed as a single-family residence, is located at 2655 Wisteria Street, in Jacksonville, Florida, and has a 2020 assessed value of $43,095.  Dkt. 50-2.  The records for these two properties also reflect 2020 property taxes in the total amount of slightly over $3,300, Dkts. 50-1, 50-2, which comes close to the "approximately 300.00 per month" that Bell reported as his property taxes in his IFP Application, IFP Application ¶ 6.  These property records thus further contradict Bell's statement in his IFP Application that he did not own any real estate, trust, or anything of value, including any item of value held in someone else's name.  IFP Application ¶ 5.

In addition, various expenses Bell has incurred over the course of this litigation are inconsistent with his sworn statements in the IFP Application that he possessed neither assets nor future expected income.  After Bell missed a conference in this case on August 18, 2021, he submitted an affidavit explaining that he was absent because he was "stranded due to the failure of the battery" in his car, Dkt. 58 ¶ 5, and he attached a receipt for the purchase of a battery for a 2003 Lexus ES300 for $198.85 with an American Express card, Dkt. 58-1 at 2-3.  But in his IFP Application, Bell swore that he did not own an automobile, IFP Application ¶ 5, and that he had

---

[5] The Court takes judicial notice of these public property assessment records, which have been submitted by Gray and whose authenticity Bell does not challenge.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (explaining that courts may "take judicial notice of relevant matters of public record"); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008) (noting that courts may consider judicially noticed materials on a motion to dismiss).

no financial resources, whether in cash or in a checking or savings account, *id.* ¶ 4.  While perhaps Bell did not "own" that Lexus, he was not only able to pay close to $200 for a battery purchase, but he also was in adequate enough financial health to qualify for an American Express credit card. Even Bell's mere act of mailing his Complaint (including presumably his IFP Application) to the Court reflected the falsity of his statements in the application.  The U.S. Postal Service receipt for that priority express mailing reveals that, on February 18, 2020, he paid $26.35 for postage. Compl. at 44.  Yet in his IFP Application, which Bell signed the day before, Bell attested that he had "$0.00" in cash or in any checking or savings account at that time.  IFP Application ¶ 4.

Bell's efforts to explain these discrepancies are not persuasive.  *See* Motion to Amend ¶¶ 8-11.  He insisted that he did not own an automobile at the time of his IFP Application.  *Id.* ¶ 8.  But, again, even assuming he did not own the Lexus that required a new battery the day of the August 18, 2021 conference, the question is whether he had financial resources at the time that were not reported in the IFP Application.  *See* 28 U.S.C. § 1915(e)(2)(A) (requiring dismissal when "the allegation of poverty is untrue").  He similarly stated that he "is informed and believes . . . that he did not own real property" at the time of that Application.  Motion to Amend. ¶ 9.  Initially, as noted, Florida property records, which Bell does not challenge, show that he is the trustee of trusts that hold two properties and that these properties were purchased in 2017, well before the commencement of this case.  Dkts. 50-1, 50-2.  Moreover, his admission in the IFP Application to owing property tax, IFP Application ¶ 6, cannot be reconciled with his denial of owning any property, *id.* ¶ 5.  And notably, his arguments opposing dismissal in his Motion to Amend do not attempt to explain these matters, aside from a conclusory denial of having information and belief that he owned real property when he sought *in forma pauperis* status.

He also argues in his Motion to Amend that he did not have a personal bank account at the time of his IFP Application, Motion to Amend ¶ 10, and suggests that third parties paid for the mailing of his Complaint to the Court, *id.* ¶ 11.  But this does not address Bell's assertion in the Application that he had "$0.00" in "cash" (as well as in any checking or savings account),  IFP Application ¶ 4, despite his disclosure that he received $9,500 for business consulting over the prior twelve months, *id.* ¶ 3, as well as paying monthly expenses for utilities, food, and property taxes, *id.* ¶ 6.  And while not necessarily indicative of his financial resources at the time of the IFP Application, his expenses following that Application provide further atmospherics that suggest his denial of having even a penny was false.  For instance, as noted, on August 18, 2021, Bell purchased a new battery for his car at $198.85.  Dkt. 58-1.  And again, central to the Complaint are various allegations concerning Bell's business that involve his access to expensive automobiles, *see, e.g.*, Compl. ¶¶ 14, 21, which stand at odds with his blanket denial of access to any money or assets, IFP Application ¶¶ 4, 5.

In considering whether dismissal is appropriate, the Court also has considered Bell's extensive litigation history and familiarity with the judicial system, including the procedures for seeking *in forma pauperis* status.  *See Vann*, 496 F. App'x at 115 ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the *in forma pauperis* system and history of litigation."); *Vann*, 2011 WL 3501880, at *3 ("Plaintiff's litigation experience and familiarity with the IFP system further compound the severity of the misrepresentation.").  By all accounts, Bell is a serial litigant who is intimately familiar with our judicial system.  One federal judge even took judicial notice that Bell is "a frequent litigant who has faced several dismissals and sanctions for improper conduct in the course of litigation."  *Bell v. United Auto Grp., Inc.*, No. 05 Civ. 2262 (NLH), 2007 WL 2892940, at *5 n.6 (D.N.J. Sept. 28,

2007) (collecting cases)).  In just this District alone, Bell has filed at least two dozen *pro se* cases

going back nearly two decades.[6]  And he has had at least one *in forma pauperis* application rejected

by a judge in this District.  *See Bell*, No. 08 Civ. 8965 (RJS) (S.D.N.Y. Jan. 5, 2010), Dkt. 35

(denying an *in forma pauperis* application for purposes of appeal because Bell had made

significant profits selling cars).

    While Bell requests "the opportunity to refute" Gray's allegations of fraud after discovery,

Motion to Amend ¶ 13, he has been afforded the opportunity—including multiple extensions, Dkts.

67, 71, 80—to explain these discrepancies and has failed to convincingly do so.  Moreover, to the

extent there are any relevant documents regarding Bell's financial status, those would presumably

be in Bell's possession, not Gray's.  Indeed, Bell has previously represented that he had sufficient

documents in his possession to refute Gray's allegations.  Dkt. 76 at 1.  Nonetheless, despite the

extensions that Bell has received, he has failed to produce any such documents.

    In sum, a wealth of information demonstrates that Bell's sworn statements about his

poverty were false, including contradictory allegations in his own Complaint.  Consequently, the

---

[6] *See Bell v. Schaeffer Buick BMW, Inc.*, No. 03 Civ. 10315 (PKC) (FM) (S.D.N.Y.); *Bell v. Classic Chevrolet/Buick and BMW, Inc.*, No. 04 Civ. 693 (PKC) (S.D.N.Y.); *Bell v. Zavell*, No. 04 Civ. 9733 (RWS) (S.D.N.Y.); *Bell v. Gordon*, No. 05 Civ. 2163 (NRB) (S.D.N.Y.); *Bell v. Andy's Car Co., Inc.*, No. 05 Civ. 7182 (LTS) (RLE) (S.D.N.Y.); *Bell v. Hubbert*, No. 05 Civ. 10456 (RWS) (S.D.N.Y.); *Bell v. Gotham Process Serv., Inc.*, No. 06 Civ. 470 (JGK) (HBP) (S.D.N.Y.); *Bell v. S. Bay Eur. Corp.*, No. 06 Civ. 472 (PKC) (GWG) (S.D.N.Y.); *Bell v. Manhattan Motorcars, Inc.*, No. 06 Civ. 4972 (GBD) (S.D.N.Y.); *Bell v. Carlsen Motors Cars, Inc.*, No. 06 Civ. 4974 (LBS) (S.D.N.Y.); *Bell v. Brace Eng'g & Inv. Corp.*, No. 06 Civ. 5742 (KMK) (S.D.N.Y.); *Bell v. Carlsen Motor Cars, Inc.*, No. 07 Civ. 11323 (LBS) (S.D.N.Y.); *Bell v. Ebdat*, No. 08 Civ. 8965 (RJS) (S.D.N.Y.); *Bell v. Gordon*, No. 08 Civ. 9041 (NRB) (S.D.N.Y.); *Bell v. Pham*, No. 09 Civ. 1699 (PAC) (RLE) (S.D.N.Y.); *Bell v. Rapicavoli*, No. 09 Civ. 1728 (LAK) (MAD) (S.D.N.Y.); *Bell v. Excell Auto Grp. Inc.*, No. 11 Civ. 7039 (RA) (S.D.N.Y.); *Bell v. Ramirez*, No. 13 Civ. 7916 (PKC) (SLC) (S.D.N.Y.); *Bell v. Koss*, No. 17 Civ. 5820 (GHW) (S.D.N.Y.); *Bell v. Koss*, No. 17 Civ. 7762 (AT) (VF) (S.D.N.Y.); *Bell v. Carey*, No. 18 Civ. 2846 (PAE) (OTW) (S.D.N.Y.); *Bell v. Carey*, No. 18 Civ. 3016 (CM) (S.D.N.Y.); *Bell v. Plante*, No. 20 Civ. 4598 (JGK) (S.D.N.Y.); *Bell v. Plante*, No. 22 Civ. 5232 (LTS) (S.D.N.Y.).

Court finds that Bell's "allegation of poverty" in his IFP Application "is untrue." 28 U.S.C. § 1915(e)(2)(A). A court that makes such a determination "shall dismiss the case at any time." *Id.* § 1915(e)(2). The Court therefore dismisses Bell's Complaint. Nonetheless, the Court will not exercise its discretion to dismiss the Complaint with prejudice. For while Bell's multiple misrepresentations of his financial status, particularly given his extensive familiarity with litigation in federal court, do fairly suggest bad faith, the Court does not view the existing record, taken on its own, as sufficient to justify a factual finding concerning Bell's subjective intentions in submitting his IFP Application. Thus, although "[w]here the applicant has intentionally misled the court, the dismissal may be with prejudice," *Oquendo v. Geren*, 594 F. Supp. 2d 9, 11 (D.D.C. 2009), the Court is insufficiently convinced that Bell misled the Court intentionally to justify dismissal with prejudice in this case.

The Court also denies Bell's Motion to Amend, because any amendment to the Complaint would be futile based on the grounds for dismissal. *See Contreras v. Perimenis*, 562 F. App'x 50, 51 (2d Cir. 2014) ("A district court may deny leave to amend . . . when such an amendment would be futile."). The Court does not reach the arguments raised by Gray for dismissal based on pleading deficiencies. Rather, the Court dismisses the Complaint based on its determination that Bell's "allegation of poverty is untrue." 28 U.S.C. § 1915(e).

## III. Conclusion

For the foregoing reasons, the Court grants Gray's motion to dismiss, dismisses the Complaint without prejudice, and denies Bell's motion for leave to amend the Complaint. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 61 and 83, to close this case, and to enter judgment. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3),

that any appeal of this Order would not be taken in good faith, and therefore denies *in forma pauperis* status for purposes of appeal.

      SO ORDERED.

Dated: September 30, 2022
      New York, New York

                             JOHN P. CRONAN
                        United States District Judge